**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW MEXICO**

EDWARD RENO,

    Plaintiff,

v.                                                          Civ. No. 20-918 GJF/KRS

BOARD OF COUNTY COMMISSIONERS
FOR THE COUNTY OF EDDY and DARLA
BANNISTER,

    Defendants.

**MEMORANDUM OPINION AND ORDER**
**ON THE COUNTY'S MOTION TO DISMISS**

THIS MATTER is before the Court upon Defendant Board of County Commissioners for the County of Eddy's ("County's") Motion to Dismiss Under Rule 12(b)(6) [ECF 13] ("Motion"). The Motion is fully briefed. *See* ECFs 14 (response), 16 (reply). As explained below, the Court will **GRANT IN PART** the County's Motion by **DISMISSING WITHOUT PREJUDICE** Counts I and II of Plaintiff's Amended Complaint [ECF 12 at 6-13]. The Court will permit Plaintiff the opportunity to file a Second Amended Complaint and will retain jurisdiction over Count III in anticipation that he will do so.

**I. BACKGROUND**

In March 2020, Plaintiff filed his original complaint in New Mexico's Fifth Judicial District Court. ECF 1-1. In August 2020, some 143 days later, Plaintiff served his complaint on the County. ECF 1-2. Defendants[1] removed the case to this Court in September 2020. ECF 1. Approximately two months later, Plaintiff filed his Amended Complaint. ECF 12.

---

[1] The named defendants in Plaintiff's original complaint consisted of the County, Billy Massingill, S.D. Kurimski, and Richard T. Bannister. ECF 1. Plaintiff's Amended Complaint, however, names only the County and Darla Bannister. ECF 12.

The Amended Complaint alleges that Plaintiff was a 47-year-old "pretrial detainee in the custody and care of the Eddy County Detention Center [ECDC] from March 22, 2018 to July 5, 2018." ECF 12 ¶¶ 4, 10. He also asserts that, "at the time of his incarceration," he suffered from, *inter alia*, "an obvious and previous partial right foot amputation, the result of his diabetes." *Id.* ¶ 11. ECDC personnel allegedly "withheld [from him] regular [and necessary] changes of socks, and shoes" and "denied [him] the use of his own orthotic device"—a device that "was to go in his shoe to protect his foot stump." *Id.* ¶¶ 11-13, 21. Plaintiff contends that "[he] was required to walk with his bare feet on the bare floor of his cell, on his partially amputated stump." *Id.* ¶¶ 14, 29. Furthermore, "having to walk as a diabetic on his bare feet" caused his feet to "crack and ulcerate." *Id.* ¶ 16. And because "the floor of [his] cell … was not cleaned or disinfected," his right foot "soon bec[a]me infected"—ultimately resulting in "a below the knee amputation of [his] right foot and leg." *Id.* ¶¶ 15-16, 34.

### A. Count I (Eighth Amendment Claim under § 1983)

Brought pursuant to 42 U.S.C. § 1983, Count I of the Amended Complaint alleges that Defendant Darla Bannister was "an independent contractor employed by [the County] as a health care provider" who "violated the Eighth Amendment to the United States Constitution … [by] being deliberately indifferent to the serious medical needs of [Plaintiff]." *Id.* ¶¶ 8, 41. For instance, Plaintiff asserts that Defendant Bannister "failed to appropriately triage [him]," "actively ignored [his] symptoms and complaints," "failed to obtain for him timely medical care by a specialist," "refused to assess [him] for an orthotic or prosthetic device as required by ECDC Policy and Procedure 400.40," "depriv[ed] him of a referral to an orthotic doctor," and refused to provide him "clean socks and shoes." *Id.* ¶¶ 22, 49, 57.

2

Count I further alleges that ECDC Warden Billy Massingill—whom Plaintiff alleges to be "the final policy maker" of ECDC and the "party responsible for the constitutional healthcare," *id.* ¶¶ 7, 70, 75-77 —was also "deliberately indifferent to [Plaintiff's] constitutional rights … [by] refus[ing] to permit [a post-amputation orthotic device] to be ordered due to costs." *Id.* ¶¶ 37, 62.

### B. Count II (Municipal Liability Claim under § 1983)

Also brought pursuant to 42 U.S.C. § 1983, Count II contends that both Defendants "practice a custom and policy of providing inadequate [and unconstitutional] medical care to inmates and pretrial detainees at ECDC." *Id.* ¶¶ 12, 66, 69, 70-71, 74, 78, 80. The Amended Complaint asserts that Warden Massingill had "written," "promulgated," and "approved" such a policy. *Id.* ¶¶ 70, 77-78. The Amended Complaint describes this policy as (1) "the practice and custom of not referring patients out for orthotic or prosthetic consults;" (2) "refusing to … permit[] [Plaintiff] to wear shoes and socks;" (3) "placing [Plaintiff] in dirty cells;" (4) "the [inadequate] management of long term chronic diseases, such as diabetes;" (5) "Warden Massingill's refusal to approve [a post-amputation] orthotic devices for [Plaintiff] based solely on the costs of the orthotics and the costs of [Plaintiff's] surgery;" and (6) "creat[ing] an environment where the ECDC staff were indifferent to inmates' and pretrial detainees' pain and medical conditions." *Id.* ¶¶ 35, 72-73, 79, 81-83, 99.

The final two paragraphs of Count II allege "a causal connection between [1] Defendants['] … policies and [2] the violation of [Plaintiff's] constitutional rights [and his resulting injuries] … [through Defendants'] deliberate indifference." *Id.* ¶ 84-85.

### C. Count III (Negligence Claim under the New Mexico Tort Claims Act)

Brought under the New Mexico Tort Claims Act (NMTCA), Count III asserts that Defendants had a duty to provide a certain standard of care (e.g., to provide socks, shoes, orthotics,

3

prosthetics, "a medical appropriate plan," and/or "immediate transport to a hospital"). *Id.* ¶¶ 13, 87, 93-98, 102, 106. It also accuses Defendants of breaching that duty, *id.* ¶¶ 89-90, 103, 107, thereby causing physical and economic harm to Plaintiff, *id.* ¶¶ 91-92, 104-05, 108-09.

## II. ISSUES

### A. County's Primary Arguments

In its Motion, the County makes three principal arguments. First, it urges the Court to dismiss Count I (Eighth Amendment claim) with prejudice because "[p]retrial detainees are protected under the Due Process Clause rather than the Eighth Amendment." ECF 13 at 10-11 (quoting *Lopez v. LeMaster*, 172 F.3d 756, 759 n.2 (10th Cir. 1999)); *see also id.* at 11 (further asserting that this claim is "[an] individual capacity claim [that] does not apply to [the County]"). Second, the County requests that the Court dismiss Count II (municipal liability claim) with prejudice because the claim "lacks any fact allegations" that are sufficient to "allege a plausible claim regarding a defective policy or official deliberate indifference to a serious medical need." *Id.* at 6-10. Third, the County urges the Court to dismiss Count III (NMTCA Claim) with prejudice because Plaintiff "failed to execute due diligence in serving process on the defendant." *Id.* at 4-6; ECF 16 at 3.

### B. Plaintiff's Response

In his response, Plaintiff acknowledges that framing Count I as an *Eighth* Amendment violation is a "mistake in pleading." ECF 14 at 8-9. To cure that mistake, Plaintiff requests permission to make a "simple amendment . . . . to resolve this technicality," particularly since the corresponding Fourteenth Amendment analysis is "identical to that applied in Eighth Amendment cases." *Id.* at 9 (quoting *Burke v. Regalado*, 935 F.3d 960, 991 (l0th Cir. 2019)); *see also* ECF 16 at 1-6 (the County not contesting such a request).

4

Next, Plaintiff argues that Count II states a viable claim for municipal liability because it alleges that (1) "ECDC medical staff" "refus[ed] to provide timely and adequate medical care;" (2) Defendant Bannister contravened ECDC Policy 400.40 by not "order[ing] a consult for a prosthetic device" or allowing Plaintiff "the use of his own orthotic device, shoes, or socks;" and (3) "the warden and policy-maker of the jail," Billy Massingill, "would not approve [a post-amputation] orthopedic device." ECF 14 at 5-8. By alleging such actions, Plaintiff asserts that he has adequately pled "[a] policy of unconstitutionally withholding orthotic devices in a way that causes the detainee unnecessary pain and suffering without penological purpose." *Id.* at 7. Consequently, Plaintiff requests that the Court not dismiss Count II, but rather "permit this matter to advance into discovery." *Id.* at 8.

In addition, Plaintiff objects to the dismissal of Count III because "Defendant has not suggested that they are, or would be, prejudiced by what they consider an unreasonable delay." *Id.* at 3-5. Finally, "[Plaintiff] requests that in the event that the Court grants all, or part, of [the County's] Motion, that he be permitted to amend his complaint to address the Court's concerns." *Id.* at 9.

## III. APPLICABLE LAW

### A. Sufficiently Pleading a § 1983 Claim

#### 1. General Pleading Standard

"A pleading that states a claim for relief must contain … a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Otherwise, pursuant

to Rule 12(b)(6) of the Federal Rules of Civil Procedure, a court may dismiss such a claim for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6).

"To survive a Rule 12(b)(6) motion," *Strain v. Regalado*, 977 F.3d 984, 989 (10th Cir. 2020), a claim for relief must "contain enough allegations of *fact*, taken as true, to state a claim to relief that is plausible on its face." *Alpenglow Botanicals, LLC v. United States*, 894 F.3d 1187, 1195 (10th Cir. 2018) (emphasis added) (quoting *Khalik v. United Air Lines*, 671 F.3d 1188, 1190 (10th Cir. 2012)). Consequently, when the Court "evaluat[es] the sufficiency of a complaint," it must "disregard conclusory statements and look only to whether the remaining, *factual* allegations plausibly suggest the defendant is liable." *Id.* (emphasis added) (quoting *Khalik*, 671 F.3d at 1191). In other words, "'legal conclusions' as well as '[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements,'" are not "entitled to the assumption of truth." *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009)). Instead, the court is to only "'assume the veracity' of the well-pleaded factual allegations 'and then determine whether they plausibly give rise to an entitlement to relief.'" *Id.* (quoting *Iqbal*, 556 U.S. at 679); *see also Iqbal*, 556 U.S. at 678 (explaining that such well-pled "factual content [must] allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged").

2. Deliberate Indifference Claim under § 1983

Under 42 U.S.C. § 1983, any person acting under color of state law who "subjects, or causes to be subjected, any citizen of the United States … to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured." "The Supreme Court first recognized a § 1983 claim for deliberate indifference under the Eighth Amendment, which protects the rights of convicted prisoners." *Strain*, 977 F.3d at 989 (citing *Estelle v. Gamble*, 429 U.S. 97, 104 (1976) (holding that deliberate indifference to a convicted

prisoner's serious medical needs constitutes cruel and unusual punishment in violation of Eighth Amendment)). "[A]lthough the Eighth Amendment protects the rights of convicted prisoners," the Tenth Circuit "later granted pretrial detainees access to the [deliberate indifference] claim under the Fourteenth Amendment." *Id.* (citing *Garcia v. Salt Lake Cty.*, 768 F.2d 303, 307 (10th Cir. 1985)). Furthermore, the Court "appl[ies] the same deliberate indifference standard no matter which amendment provides the constitutional basis for the claim." *Id.*

3. Municipal Liability Claim under § 1983

Local governments are considered "persons" who may be liable under § 1983. *Monell v. Dep't. of Soc. Servs.*, 436 U.S. 658, 690 (1978). Nevertheless, "[i]t is well established that in a § 1983 case a city or other local governmental entity cannot be subject to liability at all unless the harm was caused in the implementation of 'official municipal policy.'" *Lozman v. City of Riviera Beach*, 138 S. Ct. 1945, 1952 (2018) (quoting *Monell*, 436 U.S. at 691). In other words, "a municipality cannot be held liable … solely because it employs a tortfeasor." *L.A. County v. Humphries*, 562 U.S. 29, 36 (2010) (quoting *Monell*, 436 U.S. at 691). "Rather, to establish municipal liability, a plaintiff must show 1) the existence of a municipal policy or custom, and 2) that there is a direct causal link between the policy or custom and the injury alleged." *Jensen v. West Jordan City*, 968 F.3d 1187, 1204 (10th Cir. 2020) (quoting *Bryson v. City of Oklahoma City*, 627 F.3d 784, 788 (10th Cir. 2010)); *see also Graves v. Thomas*, 450 F.3d 1215, 1218 (10th Cir. 2006) (noting that "a municipality may not be held liable where there was no underlying constitutional violation by any of its officers").

A "municipal policy or custom … may take one of the following forms:"

> (1) a formal regulation or policy statement; (2) an informal custom amounting to a widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well settled as to constitute a custom or usage with the force of law; (3) the decisions of employees with final policymaking

7

authority;[2] (4) the ratification by such final policymakers of the decisions—and the basis for them—of subordinates to whom authority was delegated subject to these policymakers' review and approval; or (5) the failure to adequately train or supervise employees, so long as that failure results from deliberate indifference to the injuries that may be caused.

*Waller v. City & Cty. of Denver*, 932 F.3d 1277, 1283 (10th Cir. 2019) (quoting *Bryson v. City of Okla. City*, 627 F.3d 784, 788 (10th Cir. 2010)). Furthermore, "[t]hrough 'its deliberate conduct,' the municipality must have been the 'moving force' behind the injury." *Mocek v. City of Albuquerque*, 813 F.3d 912, 933 (10th Cir. 2015) (quoting *Bd. of Cty. Comm'rs v. Brown*, 520 U.S. 397, 404 (1997)).

### B. Diligently Prosecuting a New Mexico Tort Claims Act Claim

1. <u>Supplemental Jurisdiction</u>

Generally, a district court "shall have supplemental jurisdiction over all other claims that are so related to claims … within [the court's] original jurisdiction that they form part of the same case or controversy." 28 U.S.C. § 1367(a). But "[t]he district courts may decline to exercise supplemental jurisdiction over a claim … if … the district court has dismissed all claims over which it has original jurisdiction." § 1367(c). In fact, "if the federal claims are dismissed before trial … the state claims should be dismissed as well." *Strain*, 977 F.3d at 997 (quoting *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966)). Nevertheless, in instances where the

---

[2] "[W]hether a particular official has '*final* policymaking authority' is a question of state law." *City of St. Louis v. Praprotnik*, 485 U.S. 112, 123 (1988) (emphasis added); *see also Pembaur v. Cincinnati*, 475 U. S. 469, 483 (1986) (observing that "[a]uthority to make municipal policy may be granted directly by a legislative enactment or may be delegated by an official who possesses such authority"). Furthermore, "the challenged action must have been taken *pursuant to a policy adopted by the official* … responsible under state law for making policy in that area of the city's business." *Id.* (emphasis added). In other words, "[m]unicipal liability attaches only where the decisionmaker possesses final authority to establish municipal policy with respect to the action ordered." *Pembaur*, 475 U. S. at 482. Thus, "the fact that a particular official—even a policymaking official—has discretion in the exercise of particular functions does not, without more, give rise to municipal liability based on an exercise of that discretion." *Id.*

8

federal claims were dismissed—but plaintiffs were granted leave to amend those claims—a federal court may retain supplemental jurisdiction.³

When exercising supplemental jurisdiction, a federal court applies state substantive law and federal procedural law. *Felder v. Casey*, 487 U.S. 131, 151 (1988*)*; *James River Ins. Co. v. Rapid Funding, LLC*, 658 F.3d 1207, 1216-17 (10th Cir. 2011) (citing *Erie Railroad Co. v. Tompkins*, 304 U.S. 64 (1938); *Hanna v. Plumer*, 380 U.S. 460, 465, (1965)).⁴ In "apply[ing] the substantive laws of the forum state," *New York Life Ins. Co. v. K N Energy, Inc.*, 80 F.3d 405, 409 (10th Cir. 1996), "[t]he federal court must follow the most recent decisions of the state's highest court." *Wade v. EMCASCO Ins. Co.*, 483 F.3d 657, 665-66 (10th Cir. 2007) (citing *Wankier v. Crown Equip. Corp.*, 353 F.3d 862, 866 (10th Cir. 2003)). And "[w]here no controlling state

---

³ *See, e.g., Polyrock Techs., LLC v. General Steel Domestic Sales, LLC,* No. 04-cv-00617-LTB-BNB, 2005 WL 3157971, 2005 U.S. Dist. LEXIS 31377, at *9-10 (D. Colo. Nov. 18, 2005) (finding "it would be a waste of judicial resources to require Plaintiff to proceed with separate state court litigation" in light of a forthcoming amended complaint with a federal claim involving "the same set of operative facts"); *Sanders v. Palomar Med. Ctr.*, No. 10 CV 0514 MMA (AJB), 2010 WL 2635627, 2010 U.S. Dist. LEXIS 65120, at *18 (S.D. Cal. Jun. 30, 2010) (finding it "premature to determine whether [to] retain supplemental jurisdiction" because "the Court ha[d] granted Plaintiff leave to amend"); *United States ex rel. McGinnis v. OSF Healthcare Sys.*, No. 11-cv-1392, 2014 WL 378644, 2014 U.S. Dist. LEXIS 12600, at * 31-32 (C.D. Ill. Feb. 3, 2014) (granting leave to amend, but cautioning that "[s]hould Plaintiff fail to amend his complaint within the time allotted, the Court [would] reassess whether it [would] retain supplemental jurisdiction over this action"); *see also City of Chicago v. Int'l College of Surgeons*, 522 U.S. 156, 173 (1997) (observing that "when deciding whether to exercise supplemental jurisdiction, a federal court should consider and weigh in each case, and at every stage of the litigation, the values of judicial economy, convenience, fairness, and comity" (internal quotation marks omitted)).

⁴ The federal rules of civil procedure will govern the dispute "[i]f there is a *direct collision* between the state law and [a valid] federal rule [of civil procedure]." *Racher v. Westlake Nursing Home Ltd. P'ship*, 871 F.3d 1152, 1162-63 (10th Cir. 2017) (emphasis added) (citations omitted); *see also Hanna*, 380 U.S. 460 at 473-74 (holding that Federal Rule of Civil Procedure 4(d) controlled service of process in a federal diversity case—and not a Massachusetts service of process statute). Nevertheless, at least in terms of the discretionary relief sought in the instant case, "the plain meaning of [the applicable] federal rule [Fed. R. Civ. P. 4(m)] [does] not come into direct collision with the [applicable] state law [N.M. R. Ann. 1-004(C)(2)]." *James River*, 658 F.3d at 1218 (quoting *Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*, 559 U.S. 393, 421 (2010)) *see infra* note 5 (explaining that, at least in this case, both rules are not in "direct collision"). Consequently, "both [rules] can operate." *James River*, 658 F.3d at 1218; *see Sandoval v. McKinley Cty. Adult Det. Ctr.*, No. 1:20-cv-00162 KWR/JFR, 2020 U.S. Dist. LEXIS 81119, at *5-6 (D.N.M. May 7, 2020) (applying the reasonable diligence standard for service set forth in N.M. Rule Ann. 1-004(C)—without noting a conflict with the federal rules of civil procedure); *Ramirez v. New Mexico*, No. 14-448 GBW/KBM, 2015 U.S. Dist. LEXIS 193406, at *5-10 (D.N.M. Aug. 26, 2015) (same).

decision exists, the federal court must attempt to predict what the state's highest court would do." *Id.* at 666 (quoting *Wankier*, 353 F.3d at 866).

2. Due Diligence in Prosecuting a Suit

Under the NMTCA, an action "against a governmental entity or a public employee for torts shall be forever barred, unless such action is commenced within two years after the date of occurrence." N.M. Stat. Ann. § 41-4-15(A) (1978). In addition, New Mexico law provides that "[a] civil action is commenced by filing a complaint with the court." N.M. R. Ann. 1-003. Furthermore, "[t]he statute of limitations [is] tolled when the complaint [is] filed." *Salas v. Mt. States Mut. Cas. Co.*, 173 P.3d 35, 43 (N.M. Ct. App. 2007).

Although "the statute [of limitations] is tolled by the timely filing of the complaint," "the trial court, in the exercise of its inherent power *and in its discretion*, independent of statute, *may* dismiss a case for failure to prosecute when it is satisfied that plaintiff has not applied due diligence in the prosecution of his suit." *Prieto v. Home Ed. Livelihood Program*, 616 P.2d 1123, 1127 (N.M. Ct. App. 1980) (emphasis added). Regarding due diligence, the New Mexico Supreme Court has observed that there is "no set period of time for service of process." *Snow v. Warren Power & Mach., Inc.*, 354 P.3d 1285, 1292 (N.M. 2015) (citing N.M. R. Ann. 1-004(C)(2) ("Service of process shall be made with reasonable diligence.")). Nevertheless, "[t]he basic rule in New Mexico is that all parties to an action must be actually or constructively served within a period of time that includes the statute of limitations period *plus* a reasonable time for service of process." *Romero v. Bachicha*, 28 P.3d 1151, 1156 (N.M. Ct. App. 2001) (emphasis added).

"In considering a motion relating to due diligence under Rule 1-004[]," New Mexico district courts "apply[] [a] standard of objective reasonableness" by "consider[ing] the totality of circumstances and … weigh[ing] the actions taken by [plaintiff] to obtain service against the

10

prejudice to [defendant] resulting from the delay of service." *Martinez v. Segovia*, 62 P.3d 331, 338 (N.M. Ct. App. 2002). In applying this standard, a court "*exercise[s] its discretio*n in determining [1] whether delay demonstrates a lack of due diligence and [2] whether the delay warrants dismissal of the complaint." *Id.* (emphasis added); *see also id.* (noting that the court's decision is reviewed "under the abuse of discretion standard of review"); *Graubard v. Balcor Co.*, 999 P.2d 434, 436 (N.M. Ct. App. 2000) (observing that "a dismissal for failure to prosecute with reasonable diligence is functionally the same as a dismissal for negligence in prosecution" (brackets omitted) (quoting *Gathman-Matotan Architects & Planners, Inc. v. State, Dep't of Fin. & Admin.*, 787 P.2d 411, 412 (N.M.1990))).[5]

## IV. ANALYSIS

For the following reasons, the Court holds that the Amended Complaint states neither a valid deliberate indifference claim under § 1983 (Count I) nor a valid municipal liability claim under § 1983 (Count II). The Court, however, will dismiss these claims *without prejudice* and grant Plaintiff leave to amend these two claims. Regarding Plaintiff's negligence claim under the

---

[5] The Court notes that Rule 4(m) of the Federal Rules of Civil Procedure (which requires defendants to be served "within 90 days after the complaint is filed") is not *identical* to Rule 1-004(C) of the New Mexico Rules of Civil Procedure (which requires Defendants to be served "with reasonable diligence"). Nevertheless, there is no "direct collision" between these rules—and particularly their enforcement—in this case, as the violation of either rule would neither affect the *tolled* statute of limitations nor *require* a dismissal with prejudice. *See* Fed. R. Civ. P. 4(m); *Martinez v. Segovia*, 62 P.3d 331, 338. Instead, the violation of either rule may prompt a court to exercise its *discretion* to consider a dismissal with prejudice in light of the "totality of circumstances," *id. Compare id. with AdvantEdge Bus. Grp. v. Thomas E. Mestmaker & Assocs., Inc.*, 552 F.3d 1233, 1236 (10th Cir. 2009) (observing that (1) "[a] [federal] district court undoubtedly has discretion to sanction a party for failing to prosecute;" (2) "[the Tenth Circuit] review[s] for an abuse of discretion an order dismissing an action for failure to prosecute; (3) "[w]hen dismissing a case without prejudice, a district court may, without abusing its discretion, enter such an order without attention to any particular procedures;" (4) "[a] dismissal with prejudice, on the other hand, is a harsh remedy, and the district court should ordinarily first consider certain criteria; and (5) such criteria include "[i] the degree of actual prejudice to the other party; [ii] the amount of interference with the judicial process; [iii] the litigant's culpability; [iv] whether the court warned the party in advance that dismissal would be a likely sanction for noncompliance; and [v] the efficacy of lesser sanctions" (quotations omitted)); *see also James River*, 658 F.3d at 1219 (allowing both federal and state rules of evidence to operate because "the two rules d[id] not conflict"—given that "[certain lay opinion] testimony [was] inadmissible under both Federal Rule 701 and Colorado Rule 701"). Furthermore—given that both rules lead to the same result in the instant case, *see infra* Section IV(C)—the Court will permit "both [rules] [to] operate" in its analysis. *James River*, 658 F.3d at 1218.

NMTCA (Count III), the Court concludes that (1) it should retain supplemental jurisdiction over this claim, at least at this point in the litigation, and (2) Plaintiff's delay in serving process does not warrant the sanction of dismissal of this claim.

### A. Count I Does Not State a Valid Deliberate Indifference Claim under § 1983

Count I of Plaintiff's Amended Complaint is "a § 1983 claim for deliberate indifference under the Eighth Amendment, which protects the rights of *convicted prisoners*." *Strain*, 977 F.3d at 989 (emphasis added); *see* ECF 12 at 6-10. But because Plaintiff "was a *pretrial detainee*" "[a]t all relevant times," ECF 12 ¶ 8 (emphasis added), Count I does not "state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). Although this distinction is without much difference given the symmetry between the legal standards, the Court is compelled to grant the Motion and permit amendment.

Nevertheless, "[g]enerally, failure to set forth in the complaint a theory upon which the plaintiff could recover does not bar a plaintiff from pursuing a claim"—unless "the new theory prejudices the other party in maintaining its defense." *McBeth v. Himes*, 598 F.3d 708, 716 (10th Cir. 2010) (quotation omitted); *see also Burke*, 935 F.3d at 1005 (same). Furthermore, "[t]he court should freely give leave [to amend a pleading] when justice so requires." Fed. R. Civ. P. 15(a)(2).

Consequently, the Court will dismiss Count I without prejudice and grant Plaintiff leave to amend it to address the deficiency identified in this Order. In doing so, the Court notes that the County does not oppose Plaintiff's request to amend Count I. *See* ECFs 14 at 9; 16 at 1-6. In addition, the Court notes that—because it "appl[ies] the same deliberate indifference standard no matter which amendment [Eighth or Fourteenth] provides the constitutional basis for the claim," *Strain*, 977 F.3d at 989—there appears to be no "undue prejudice" to Plaintiff by allowing such an amendment. *See Hasan v. AIG Prop. Cas. Co.*, 935 F.3d 1092, 1101-02 (10th Cir. 2019) (stating

that a court may deny leave to amend because of "undue delay," "bad faith or dilatory motive," "repeated failure to cure deficiencies," "undue prejudice," or "futility of the amendment" (quotation and brackets omitted)).[6]

**B. Count II Does Not State a Valid Municipal Liability Claim under § 1983**

The Court holds that Count II of the Amended Complaint, which alleges municipal liability under § 1983, also does not "state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6).

In reaching this conclusion, the Court finds that there are insufficient "allegations of *fact*, taken as true," *Alpenglow*, 894 F.3d at 1195 (emphasis added), to "*show* [] the existence of a municipal policy or custom," *Jensen*, 968 F.3d at 1204 (emphasis added), that caused a "constitutional violation by any of its officers," *Graves*, 450 F.3d 1215. For instance, nothing in Count II *shows* "[such a] formal regulation or policy statement," "an informal custom amounting to a *widespread* practice that … is *so permanent and well settled* as to constitute a custom or usage with the force of law," or "[a] failure to adequately train or supervise employees … [that] results from deliberate indifference to the injuries that may be cause." *Waller*, 932 F.3d at 1283 (emphasis added); *see* ECF 12 ¶¶ 65-85. Indeed, Count II does little more than recount Plaintiff's specific allegations of inadequate medical care (e.g., a denial of socks, shoes, orthotics, prosthetics, a clean cell floor, and appropriate management of diabetic complication), *see id.* ¶¶ 72-73, 79, 81-83—and then baldly asserts that this inadequate care was the result of "[a] *policy* of providing inadequate medical care" ECDC," *see id.* ¶¶ 66, 69, 70-71, 74, 78, 80 (emphasis added). But

---

[6] The Court notes that Count I applies only to Defendant Bannister. *See* ECF 12 at ¶¶ 40-61. Admittedly, the final paragraph of Count I does allege that "final policy maker" Warden Massingill was "deliberately indifferent" by not permitting a post-amputation orthotic device. *See id.* at ¶ 62. But as discussed in Section IV(B) *infra*, this allegation does not sufficiently allege that this action amounts to "the existence of a municipal policy … [and] a direct causal link between [such a policy] and the injury alleged." *Jensen*, 968 F.3d at 1204.

Plaintiff's "conclusory statements" that such a policy existed—i.e., his "[t]hreadbare recitals of [an] element[] of a [municipal liability] cause of action"—are not "entitled to the assumption of truth." *Alpenglow*, 894 F.3d at 1195; *see also Abila v. Funk*, No. 14-1002 JB/SMV, 2016 U.S. Dist. LEXIS 172737 (D.N.M. Dec. 14, 2016), at *45-53 (reviewing numerous municipal liability cases and concluding that "[they] all stand for the same thing: at the pleading stage, the existence of a *Monell* policy is a 'conclusion' to be built up to, rather than a 'fact' to be baldly asserted").

Aside from these conclusory statements, the Amended Complaint appears to include an allegation that a policy existed due to the "decision[] of [an] employee[] with final policymaking authority," *Waller*, 932 F.3d at 1283. *See* ECF 14 at 7-8. Specifically, the Amended Complaint alleges that "final policy maker" Warden Massingill was "deliberately indifferent" by not authorizing the ordering of a post-amputation orthotic device for Plaintiff. *See* ECF 12 ¶¶ 37, 62, 75-77, 83. But the Court finds that such representations do not sufficiently allege "the existence of a municipal policy … [and] a direct causal link between [such a policy] and the injury alleged." *Jensen*, 968 F.3d at 1204. First, Plaintiff's legal conclusion that Warden Massingill was the "*final* policymaking authority," *Praprotnik*, 485 U.S. at 123, "with respect to the action ordered [i.e., denying a government-ordered post-amputation orthotic]," *Pembaur*, 475 U. S. at 482, is supported only by the general—if not tautological—allegation that Warden Massingill was the "final policy maker" who ensured appropriate medical care. *See* ECF 12 ¶ 7, 75-77. Second, no factual allegations suggest that Warden Massingill made this denial "pursuant to a policy [he had] adopted"—or did anything more than use his "discretion in the exercise of [a] particular function." *Pembaur*, 475 U. S. at 482-83. Third, no factual allegations provide "a direct causal link" between this denial and the injury stemming from the "underlying constitutional violation," *Graves*, 450

F.3d at 1218—as the alleged constitutional violation that led to the amputation happened *before* Warden Massingill denied the post-amputation orthotic. *See* ECF 12 ¶¶ 10-38.

Because Count II of the Amended Complaint in its current form does not state a claim upon which relief can be granted, the Court will dismiss it without prejudice. Furthermore, the Court is unaware of, and the County does not address, any reason why Plaintiff should not be granted leave to amend Count II. *See* ECFs 13, 16; *Hasan*, 935 F.3d at 1101-02. Consequently, the Court will also grant Plaintiff leave to amend Count II to address the deficiencies identified in this Order.

**C. Plaintiff's Delay in Serving Process Does Not Warrant Dismissal of Count III**

The Court acknowledges that, generally, "if the federal claims are dismissed before trial … the state claims should be dismissed as well." *Strain*, 977 F.3d at 997. Nevertheless, because Plaintiff has been granted leave to amend his two dismissed federal claims—and because at least one of these claims will thus likely reappear in a subsequent iteration of the Complaint—the Court will retain supplemental jurisdiction over Count III at this time. *See supra* note 3. Should Plaintiff fail to timely amend at least one of these federal claims, however, or should the forthcoming amended federal claim(s) later be dismissed, the Court will reassess whether to retain supplemental jurisdiction over Count III.

Plaintiff's nearly five-month delay in serving the County would likely qualify as a lack of due diligence by most standards. Nevertheless, such a delay does not warrant the Court using its *discretion* to sanction Plaintiff for failure to prosecute—specifically by imposing the "harsh remedy" of dismissing Count III with prejudice. *AdvantEdge*, 552 F.3d at 1236; *Martinez*, 62 P.3d at 338. And this result is true whether the Court applies the "totality of the circumstances" test in the New Mexico case of *Martinez*, 62 P.3d at 338, or the similar criteria listed in the Tenth Circuit case of *AdvantEdge*, 552 F.3d at 1236. *See also supra* note 5 (illustrating the similarities between

15

the tests). Indeed, the Court is not aware of, and the County does not identify, any New Mexico or federal cases in which a court—without first providing some sort of prior warning or lesser sanction—dismissed a plaintiff's complaint with prejudice because plaintiff took five or fewer months after filing a complaint to serve a defendant.[7] Consequently, the Court will deny the County's request to dismiss Count III.

## V. CONCLUSION

For the foregoing reasons, the Court holds that Counts I and II do not state claims upon which relief may be granted. The Court, however, will grant Plaintiff leave to amend these two claims. In addition, the Court will retain supplemental jurisdiction over Count III, and refrain from dismissing Count III as a sanction for Plaintiff's delay in service.

**IT IS THEREFORE ORDERED** that the County's Motion is **GRANTED IN PART** in that Counts I and II of the Amended Complaint [ECF 12 at 6-13] are **DISMISSED WITHOUT PREJUDICE**. The County's Motion is otherwise **DENIED**.

**IT IS FURTHER ORDERED** that Plaintiff may address the deficiencies identified in this Order by filing a Second Amended Complaint **no later than June 11, 2021**.

**IT IS FINALLY ORDERED** that "Defendants Board of County Commissioners for the County of Eddy, Billy Massingill, S.D. Kurimski, and Richard T. Bannister's Motion to Dismiss Under Rule 12(b)(6)" [ECF 7]—which addressed Plaintiff's original (non-amended) complaint and which was superseded by the instant Motion, *see* ECFs 10-13—is **DENIED AS MOOT**.

---

[7] *See* ECFs 13 at 6; 16 at 2-3; *see also Musick v. Sierra Nevada Prop. Mgmt. Co., LLC*, No. 34,134, 2016 N.M. App. Unpub. LEXIS 184, at *4-12 (N.M. Ct. App. May 3, 2016) (dismissal due to a delay in service lasting over two years); *Ramirez*, 2015 U.S. Dist. LEXIS 193406, at *11-12 (same); *Padilla v. Reed*, No. A-1-CA-36117, 2017 N.M. App. Unpub. LEXIS 362, at *2-4 (N.M. Ct. App. 2007) (involving a twenty-month delay); *Graubard*, 999 P.2d at 435-37 (fourteen-month delay); *Romero v. Bachicha*, 28 P.3d 1151, 1157-58 (thirteen-month delay).

**SO ORDERED.**

_____
THE HONORABLE GREGORY J. FOURATT
UNITED STATES MAGISTRATE JUDGE
*Presiding by Consent*